**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AiBUY Holdco, Inc., *et al.*,[1] | § | Case No.: 22-31737-sgj11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

---

**DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

---

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL <u>FOLLOWING SOLICITATION</u>.

Holland N. O'Neil (TX 14864700)
Mark C. Moore (TX 24074751)
Stephen A. Jones (TX 24101270)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile:  (214) 999-4667
honeil@foley.com
mmoore@foley.com
sajones@foley.com

**PROPOSED COUNSEL TO DEBTORS**
**AND DEBTORS IN POSSESSION**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: AiBUY Holdco, Inc. (6241) and AiBUY Opco, LLC (5327). The Debtors' address is 18111 Preston Road, Suite 620, Dallas, TX 75252.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
GOVERNING LAW, AND OTHER REFERENCES ...........................................................1
    A.    Defined Terms.............................................................................................1
    B.    Rules of Interpretation .............................................................................10
    C.    Computation of Time ...............................................................................10
    D.    Governing Law .........................................................................................11
    E.    Reference to Monetary Figures ................................................................11
    F.    Reference to the Debtors or the Reorganized Debtors .............................11
    G.    Controlling Document ..............................................................................11

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS .........................................11
    A.    Administrative Claims ..............................................................................11
    B.    DIP Claims ...............................................................................................12
    C.    Professional Fee Claims ...........................................................................12
        1.    Final Professional Fee Applications ...........................................12
        2.    Professional Fee Claims Estimate ..............................................13
        3.    Professional Fee Reserve ...........................................................13
        4.    Post-Effective Date Fees and Expenses .....................................13
    D.    Priority Tax Claims ..................................................................................13
    E.    Statutory Fees ..........................................................................................14

ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
INTERESTS ..........................................................................................................................14
    A.    Classification of Claims and Interests .....................................................14
    B.    Treatment of Classes of Claims ...............................................................15
        1.    Class 1 — Other Priority Claims ................................................15
        2.    Class 2 — Other Secured Claims ...............................................15
        3.    Class 3 — Prepetition Stinv Claims ...........................................16
        4.    Class 4 — General Unsecured Claims ........................................16
        5.    Class 5 — Interests in AiBUY Holdco ........................................16
        6.    Class 6 —Interests in AiBUY Opco ...........................................16
    C.    Special Provision Governing Unimpaired Claims ...................................17
    D.    Elimination of Vacant Classes .................................................................17
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes .....................17
    F.    Subordinated Claims ................................................................................17
    G.    Intercompany Interests .............................................................................17
    H.    Controversy Concerning Impairment .......................................................17
    I.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.............17

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...............................18
    A.    General Settlement of Claims and Interests .............................................18
    B.    Restructuring Transactions .......................................................................18
    C.    Sources of Consideration for Plan Distributions .....................................18
        1.    Cash on Hand ..............................................................................19
        2.    Plan Contribution ........................................................................19
        3.    Issuance and Distribution of the New Common Equity...............19
        4.    The Exit Facility .........................................................................19

     5.    The Restructured Stinv Note ................................................................... 20
D.    Exemption from Registration Requirements ...................................................... 20
E.    Corporate Existence ...................................................................................... 20
F.    Corporate Action .......................................................................................... 21
G.    Vesting of Assets in the Reorganized Debtors ................................................ 21
H.    Cancellation of Notes, Instruments, Certificates, and Other Documents ......... 21
I.    Effectuating Documents; Further Transactions ............................................... 22
J.    Exemptions from Certain Taxes and Fees ...................................................... 22
K.    New Organizational Documents .................................................................... 22
L.    Preservation of Causes of Action .................................................................. 22

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 23**
A.    Rejection of Executory Contracts and Unexpired Leases ................................ 23
B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ....... 23
C.    Cure of Defaults and Objections to Cure and Assumption ............................. 24
D.    Insurance Policies ........................................................................................ 25
E.    Director, Officer, Manager, and Employee Liability Insurance ...................... 25
F.    Employee and Retiree Benefits ..................................................................... 25
G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ... 26
H.    Reservation of Rights ................................................................................... 26
I.    Non-Occurrence of Effective Date. ............................................................... 26
J.    Contracts and Leases Entered Into After the Petition Date ............................. 26

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 26**
A.    Timing and Calculation of Amounts to Be Distributed .................................. 26
B.    Distributions on Account of Obligations of Multiple Debtors ........................ 27
C.    Distribution Agent ....................................................................................... 27
D.    Delivery of Distributions .............................................................................. 27
     1.    Delivery of Distributions in General. ................................................ 27
     2.    Undeliverable Distributions and Unclaimed Property ......................... 27
     3.    No Fractional Distributions ................................................................ 28
E.    Manner of Payment ..................................................................................... 28
F.    Compliance Matters ..................................................................................... 28
G.    Postpetition Interest on Claims ..................................................................... 28
H.    Allocation Between Principal and Accrued Interest ........................................ 28
I.    Setoffs and Recoupment ............................................................................... 28
J.    Claims Paid or Payable by Third Parties ....................................................... 29
     1.    Claims Paid by Third Parties ............................................................. 29
     2.    Claims Payable by Third Parties ........................................................ 29
     3.    Applicability of Insurance Policies ..................................................... 29

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS AND INTERESTS ............................................................................. 30**
A.    Allowance of Claims and Interests ............................................................... 30
B.    Claims Administration Responsibilities. ........................................................ 30
C.    Estimation of Claims and Interests ............................................................... 30
D.    Adjustment to Claims Without Objection ...................................................... 30
E.    No Distributions Pending Allowance ............................................................. 31
F.    Disallowance of Claims ................................................................................ 31
G.    Distributions After Allowance ...................................................................... 31
H.    Single Satisfaction of Claims ....................................................................... 31

ii

I.     No Interest ....................................................................................................... 31

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS....32**
A.    Compromise and Settlement of Claims, Interests, and Controversies .......................... 32
B.    Discharge of Claims ............................................................................................ 32
C.    Release of Liens ................................................................................................. 32
D.    Debtor Release ................................................................................................... 33
E.    Third-Party Release ............................................................................................ 33
F.    Exculpation ....................................................................................................... 34
G.    Injunction ......................................................................................................... 35
H.    Protection Against Discriminatory Treatment ....................................................... 35
I.     Recoupment ....................................................................................................... 36
J.    Reimbursement or Contribution ........................................................................... 36
K.    Term of Injunctions or Stays ............................................................................... 36
L.    Document Retention ........................................................................................... 36

**ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................................36**
A.    Conditions Precedent to the Effective Date. .......................................................... 36
B.    Waiver of Conditions Precedent .......................................................................... 37
C.    Substantial Consummation .................................................................................. 37
D.    Effect of Non-Occurrence of Conditions to Consummation........................................ 37

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .............38**
A.    Modification of Plan ........................................................................................... 38
B.    Effect of Confirmation on Modifications ................................................................ 38
C.    Revocation or Withdrawal of Plan ........................................................................ 38

**ARTICLE XI. RETENTION OF JURISDICTION .............................................................38**

**ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................40**
A.    Immediate Binding Effect .................................................................................... 40
B.    Additional Documents ........................................................................................ 40
C.    Statutory Fees .................................................................................................... 40
D.    Reservation of Rights ......................................................................................... 40
E.    Successors and Assigns ....................................................................................... 41
F.    Service of Documents ......................................................................................... 41
G.    Entire Agreement .............................................................................................. 41
H.    Plan Supplement Exhibits ................................................................................... 42
I.     Non-Severability ................................................................................................ 42
J.    Votes Solicited in Good Faith .............................................................................. 42
K.    Waiver or Estoppel ............................................................................................ 42
L.    Closing of Chapter 11 Cases ................................................................................ 42

4888-1469-7533.9

## INTRODUCTION

AiBUY Holdco, Inc. ("**AiBUY Holdco**") and AiBUY Opco, LLC ("**AiBUY Opco**"), as debtors and debtors in possession (collectively, the "**Debtors**") propose this joint plan of reorganization (the "**Plan**") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. **Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.** Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

*A.     Defined Terms*

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) any superpriority Claim granted pursuant to the DIP Order; and (c) Allowed Professional Fee Claims.

2.      "*Administrative Claims Bar Date*" means the first Business Day that is 21 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

3.      "*Administrative Claims Objection Deadline*" means the first Business Day that is 21 days following the Administrative Claims Bar Date, except as specifically set forth in the Plan or a Final Order.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply as if such Entity were a Debtor.

5.      "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that

1

the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

6.      "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement and shall be in form and substance acceptable to the Plan Sponsor.

7.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

8.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Northern District of Texas.

9.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

10.      "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the Claims Bar Date, the Governmental Bar Date, and any other date or dates established or to be established by an order of the Court by which Proofs of Claim must be Filed.

11.      "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

12.      "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

13.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

2

14.     "*Chapter 11 Cases*" means the jointly administered cases filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

15.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not assessed or Allowed.

16.     "*Claims Agent*" means Stretto, the notice and claims agent that the Debtors retained for the Chapter 11 Cases.

17.     "*Claims Bar Date*" means, as to all Debtors, January 6, 2023 at 5:00 p.m. (prevailing Central Time) as established by the Bankruptcy Court.

18.     "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Claims Agent.

19.     "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

20.     "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

21.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

22.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

23.     "*Confirmation Objection Deadline*" means the date established by the Bankruptcy Court for filing objections to Confirmation of the Plan, which date shall be at least seven (7) days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing.

24.     "*Confirmation Order*" means, collectively, any orders of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement as having adequate information pursuant to sections 1125 and 1126 of the Bankruptcy Code, which shall be in form and substance acceptable to the Plan Sponsor.

25.     "*Consummation*" means the occurrence of the Effective Date.

26.     "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

27.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") maintained by the Debtors as of the Petition Date for liabilities against any of the Debtors' current or former directors, managers, and officers.

28.     "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.D of the Plan.

3

29.     "*Debtor*" and "*Debtors*" have the meanings given to them in the Introduction.

30.     "*DIP Claims*" means all Claims of the DIP Lender arising under, derived from, secured by, or based on the DIP Loan Documents.

31.     "*DIP Loan Documents*" means, collectively, the DIP Loan Agreement, the DIP Orders, and all other agreements, documents, and instruments related thereto, including any pledge and collateral agreements, and other security agreements, as may be amended, modified, restated, or supplemented from time to time.

32.     "*DIP Facility*" means the debtor-in-possession loan facility provided for under the DIP Loan Documents and the DIP Orders.

33.     "*DIP Lender*" means Stinv, in its capacity as lender under the DIP Facility.

34.     "*DIP Loan Agreement*" means that certain Debtor-In-Possession Loan and Security Agreement by and between the DIP Lender and the Debtors.

35.     "*DIP Orders*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Facility and incur postpetition obligations thereunder, as such orders may be amended, supplemented, or modified from time to time.

36.     "*Disclosure Statement*" means the Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

37.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest, or any portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; provided, however, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

38.     "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select in their sole and absolute discretion to make or to facilitate distributions in accordance with the Plan.

39.     "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which date shall be the Effective Date.

40.     "*Effective Date*" means, with respect to the Plan, the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

41.     "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

4

42.     "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

43.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) any statutory committees appointed in the Chapter 11 Cases and each of their respective members; (d) the DIP Lender; (e) the Exit Facility Lender; and (f) with respect to each of the foregoing in clauses (a) through (e), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

44.     "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

45.     "*Exit Facility*" means a new exit term loan credit facility issued pursuant to the Exit Facility Documents in an aggregate principal amount of $6 million secured by Liens on all or substantially all of the assets of the Reorganized Debtors.

46.     "*Exit Facility Lender*" means Stinv or its assignee, in its capacity as lender under the Exit Facility Documents, together with its successors and assigns under the terms of the Exit Facility Documents.

47.     "*Exit Facility Loan Agreement*" means that certain credit agreement dated as of the Effective Date, by and among the Reorganized Debtors and the Exit Facility Lender, the form of which shall be included in the Plan Supplement and shall be in form and substance acceptable to the Debtors and the Exit Facility Lender.

48.     "*Exit Facility Documents*" means, collectively, the Exit Facility Loan Agreement and any related agreements, documents, and instruments delivered or entered into in connection with the Exit Facility, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents related to or executed in connection therewith, the form of which documents shall be included in the Plan Supplement and shall be in form and substance acceptable to the Debtors and the Exit Facility Lender.

49.     "*Federal Judgment Rate*" means the interest rate provided under 28 U.S.C. § 1961(a), calculated as of the Petition Date.

50.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims Agent.

51.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

52.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or

rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided, however* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

53.     "*Former Debtor D&O*" means any individual who was a director or officer of the Debtors prior to the Petition Date but not a director or officer of the Debtors on or after the Petition Date.

54.     "*General Unsecured Claim*" means any Unsecured Claim that is not an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, an Intercompany Claim, the Prepetition Stinv Claims, or a Claim that is paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court.

55.     "*General Unsecured Claim Satisfaction Pool*" means Cash, in an amount sufficient to fund the General Unsecured Claim Satisfaction Pool Account and be distributed in accordance with the terms and conditions of the Plan.

56.     "*General Unsecured Claim Satisfaction Pool Account*" means a segregated account created and used exclusively to provide distributions to Class 4 General Unsecured Claims, such account to be funded on the Effective Date in accordance with Article IV of the Plan and in an amount equal to the General Unsecured Claim Satisfaction Pool. For the avoidance of doubt, the General Unsecured Claim Satisfaction Pool Account shall not be subject to any Lien or encumbrance granted in favor of the DIP Lender or any other lender.

57.     "*Governmental Bar Date*" means, as to all Debtors, May 1, 2023 at 5:00 p.m. (prevailing Central Time), or such later date as may be set by order of the Court.

58.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

59.     "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

60.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

61.     "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor.

62.     "*Intercompany Interest*" means an Interest in AiBUY Opco.

63.     "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

64.     "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* at Dk. No. 52, as amended, modified, or supplemented from time to time.

6

65.    "*Involuntary Date*" means September 23, 2022, the date on which certain creditors of AiBUY Holdco, Inc. filed an involuntary petition for relief against AiBUY Holdco, Inc.

66.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

67.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

68.    "*New Common Equity*" means the common stock, or functional equivalent thereof of AiBUY Holdco to be issued to the DIP Lender and the Plan Sponsor on the Effective Date.

69.    "*New Equity Distribution*" means the distribution of 100% of the New Common Equity to the DIP Lender and the Plan Sponsor in exchange for DIP Claims and the Plan Contribution, respectively.

70.    "*New Organizational Documents*" means the documents providing for corporate organization and governance of the Reorganized Debtors, including charters, bylaws, operating agreements or such other applicable organizational documents.

71.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

72.    "*Other Secured Claim*" means any Secured Claim, other than a DIP Claim.

73.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

74.    "*Petition Date*" means November 1, 2022, the date on which each of the Debtors commenced and/or consented to the entry of an order for relief with respect to the Chapter 11 Cases.

75.    "*Plan Contribution*" means the amount necessary to effectuate the distributions in accordance with Article IV.C.2., including, for the avoidance of doubt, the funding of the General Unsecured Claim Satisfaction Pool Account.

76.    "*Plan Sponsor*" means Stinv or its designee.

77.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed by the Debtors seven days before the deadline established to object to this Plan, as the same may be amended, supplemented, altered, or modified from time to time on the terms set forth herein, and which includes: (a) the New Organizational Documents; (b) the Exit Facility Loan Agreement; (c) the Rejected Executory Contract and Unexpired Lease List; (d) the Assumed Executory Contract and Unexpired Lease List; and (e) any other necessary documentation related to the Restructuring Transactions.

78.    "*Prepetition Stinv Claims*" means the prepetition unsecured loans advanced by Stinv to AiBUY Holdco pursuant to the Stinv Convertible Debt Documents in the aggregate principal amount of $47,580,211, plus all unpaid accrued interest and related costs through the Effective Date; provided that the Prepetition Stinv Claims shall not include any advances made after the Involuntary Date and refinanced or secured by the DIP Facility

79.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

80.     "*Professional*" means an Entity retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

81.     "*Professional Fee Claims*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date through and including the Effective Date that the Bankruptcy Court has not denied by Final Order.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

82.     "*Professional Fee Claims Estimate*" means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Article II.C.2.

83.     "*Professional Fee Reserve*" means a reserve account established and funded pursuant to Article II.C.3.

84.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

85.     "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

86.     "*Reinstate,*" "*Reinstated,*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

87.     "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list shall be included in the Plan Supplement and shall be in form and substance acceptable to the Plan Sponsor.

88.     "*Released Party*" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) the Reorganized Debtors; (c) the DIP Lender; (d) with respect to each of the foregoing, where any of the foregoing is an investment manager, advisor, or sub-advisor for a beneficial holder, such beneficial holder; and (e) with respect to each of the foregoing entities in clauses (a) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, participants, and each of their respective current and former equity holders, officers, directors, managers, principals, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals but in each case set forth in this clause (e) other than any Former Debtor D&O; *provided*, *however*, that any Entity identified in the foregoing clause (a) through (e) that opts out of the releases shall not be a "Released Party."

89.     "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) the Reorganized Debtors; (c) the DIP Lender; (d) all Holders of Claims or Interests that vote to accept or are deemed to accept the Plan; (e) all Holders of Claims that vote to reject the Plan or do

not vote to accept or reject the Plan but, in either case, do not affirmatively elect to "opt out" of being a releasing party by timely objecting to the Plan's third-party release provisions; (f) all Holders of Interests that are deemed to reject the Plan that do not affirmatively elect to "opt out" of being a releasing party under the Plan's third-party release provisions by timely completing and submitting the Opt-Out Form before the Voting and Opt-Out Deadline; (g) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing entities in clauses (a) through (f), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, participants, and each of their respective current and former equity holders, officers, directors, managers, principals, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively.

90.     "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

91.     "*Restructured Stinv Note*" means the promissory note to be issued by the Debtors to Stinv on the Effective Date in satisfaction of the Prepetition Stinv Claims, which shall be in substantially the form of the Stinv Convertible Debt Documents and shall be in form and substance acceptable to Stinv, provided that the Restructured Stinv Note shall (i) not include any right or obligation to convert any portion of the debt thereunder into common stock, and (ii) provide for a maturity date no earlier than the fifth anniversary of the Effective Date.

92.     "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan.

93.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

94.     "*SEC*" means the Securities and Exchange Commission.

95.     "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

96.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

97.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

98.     "*Stinv*" means Stocks Investment Limited, a private company limited by shares, incorporated in Cyprus.

99.    "*Stinv Convertible Debt Documents*" means, collectively, the Convertible Note Purchase Agreements and Convertible Promissory Notes between AiBUY Holdco and Stinv pursuant to which Stinv advanced unsecured loans to AiBUY Holdco in the aggregate amount of the Prepetition Stinv Claims.

100.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.E, Article VIII.F or VIII.G of the Plan, as applicable.

101.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

102.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

103.    "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

104.    "*Voting and Opt-Out Deadline*" means the deadline to submit votes to accept or reject the Plan or complete and submit an Opt-Out Form.

B.    *Rules of Interpretation*

For purposes of the Plan, except as otherwise provided in this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C.    *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may

occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control. In the event of any inconsistency between the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.      *Administrative Claims*

Except with respect to Professional Fee Claims (which shall be treated as set forth in Article II.C below), unless otherwise agreed to by a Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such

11

Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided by a Final Order entered by the Bankruptcy Court or as provided by this Article II, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their Estates, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Deadline.

*B.      DIP Claims*

Pursuant to the DIP Order, the DIP Claims are Allowed against each Debtor in the full amount outstanding on the Effective Date under the DIP Facility, including principal, interest, fees, prepayment premiums and expenses and other amounts constituting obligations under the DIP Loan Documents. Except to the extent that the DIP Lender agrees, in its sole and absolute discretion, to a less favorable treatment, in full satisfaction of the DIP Claims and all Liens securing such DIP Claims, and in consideration of the Plan Contribution, the DIP Lender shall receive on the Effective Date the New Equity Distribution.

Upon, and subject to, the Allowed DIP Claims being indefeasibly paid in full or satisfied as contemplated in this Article II.B, on the Effective Date all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

Pursuant to the DIP Loan Documents, all distributions pursuant to this Article II.B shall be made to the DIP Lender in accordance with the DIP Loan Documents.

*C.      Professional Fee Claims*

      1.      <u>Final Professional Fee Applications</u>

All final requests for allowance and payment of Professional Fee Claims (which shall include an estimate of any fees and expenses for compiling and Filing such Professional's final request for payment) must be Filed with the Bankruptcy Court no later than the first Business Day that is 45 days after the Effective Date unless otherwise ordered by the Bankruptcy Court. Any objections to Professional Fee Claims shall be Filed and served no later than 35 days after the filing of final requests for allowance and payment of Professional Fee Claims. At or before any hearing in respect of a Professional's final fee application, such Professional shall disclose the actual amount of any fees and expenses incurred for compiling and Filing its final fee application.

Except as otherwise provided in the Plan, Professionals may be paid in accordance with the Interim Compensation Order and any other applicable orders of the Bankruptcy Court.

For the avoidance of doubt, notwithstanding anything in the Plan or the Confirmation Order to the contrary, Professionals shall not be entitled to reimbursement for fees and expenses in connection with any objection to its fees, without a further order of the Bankruptcy Court.

2.      Professional Fee Claims Estimate

Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services compensable by the Debtor's Estate before and as of the Effective Date (including an estimate of any fees and expenses for compiling and Filing such Professional's final request for payment) and shall deliver such reasonable, good-faith estimate to the Debtors no later than 10 Business Days before the Effective Date; provided that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

3.      Professional Fee Reserve

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve with Cash based on its evaluation of the Professional Fee Claims Estimates, and no Liens, Claims, or interests of any kind shall encumber the Professional Fee Reserve in any way.  The Professional Fee Reserve (including funds held in the Professional Fee Reserve) (i) shall not be and shall not be deemed property of the Debtors or the Reorganized Debtors and (ii) shall be held in trust for the Professionals and for no other Person or Entity until all Professional Fee Claims have been irrevocably paid in full; provided that funds remaining in the Professional Fee Reserve after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Reserve when such Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Reserve.

If the amount of funds in the Professional Fee Reserve is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the applicable Professional by the Reorganized Debtors without any further notice to, action, order, or approval of the Bankruptcy Court or by any other Entity.

4.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall be authorized to, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses incurred after the Effective Date that may be related to implementation of the Plan, Consummation, or the Restructuring Transactions incurred on or after the Effective Date by the Debtor's professionals and to the extent set forth in the Plan and applicable Plan Documents.  Upon the Effective Date, the Reorganized Debtors may employ any professional (including any Professional employed by the Debtors during the Chapter 11 Case) in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

13

E.      *Statutory Fees*

All fees due and payable pursuant to 28 U.S.C. § 1930(a) before the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. All monthly reports due before the Effective Date shall be Filed by the Debtors on the Effective Date. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees in full in Cash when due and payable, and shall File with the Bankruptcy Court the final monthly report (for the month in which the Effective Date occurs) and quarterly reports in a form reasonably acceptable to the U.S. Trustee until the case is converted, dismissed, or closed, whichever occurs first. The U.S. Trustee shall not be required to File any Administrative Claim in the Chapter 11 Case and shall not be treated as providing any release under the Plan in connection therewith.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors (except for Class 7 Interests in AiBUY Holdco, which shall only apply to Debtor AiBUY Holdco). All of the potential Classes for the Debtors are set forth herein. Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Prepetition Stinv Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | Interests in AiBUY Holdco | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Interests in AiBUY Opco | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

14

B.      *Treatment of Classes of Claims*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

    1.      Class 1 — Other Priority Claims

        (a)    *Classification:* Class 1 consists of any Other Priority Claims.

        (b)    *Treatment:* On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each Holder thereof shall receive, at the option of the applicable Debtor(s), either:

            (i)    payment in full in Cash of the unpaid portion of its Allowed Other Priority Claim; or

            (ii)    such other treatment as may be agreed to by such Holder and the Debtors.

        (c)    Voting: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

    2.      Class 2 — Other Secured Claims

        (a)    *Classification*: Class 2 consists of any Other Secured Claims.

        (b)    *Treatment*: In full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder thereof shall receive, at the option of the applicable Debtor(s), either:

            (i)    Cash equal to the full Allowed amount of its Other Secured Claim on the later of (x) the Effective Date, (y) the date that is ten Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practicable thereafter, and (z) the date payment on account of such Other Secured Claim is due;

            (ii)    Reinstatement of such Holder's Allowed Other Secured Claim;

            (iii)    the return or abandonment of the collateral securing such Allowed Other Secured Claim to such Holder, or

            (iv)    such other treatment as may be agreed to by such Holder and the Debtors.

        (c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.      Class 3 — Prepetition Stinv Claims

   (a)      *Classification*: Class 3 consists of all Prepetition Stinv Claims against any Debtor.

   (b)      *Allowance*: On the Effective Date, Prepetition Stinv Claims shall be Allowed.

   (c)      *Treatment*: On the Effective Date, in full and final satisfaction of the Prepetition Stinv Claims, Stinv shall receive the Restructured Stinv Note.

   (d)      *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Prepetition Stinv Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 — General Unsecured Claims

   (a)      *Classification*: Class 4 consists of General Unsecured Claims against any Debtor.

   (b)      *Treatment*: On the earlier of (i) the Effective Date and (ii) the date that is ten Business Days after the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed General Unsecured Claim, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall be paid in full in Cash from the General Unsecured Claim Satisfaction Pool Account.

   (c)      *Voting:* Class 4 is Unimpaired.

5.      Class 5 — Interests in AiBUY Holdco

   (a)      *Classification:* Class 6 consists of all Interests in AiBUY Holdco.

   (a)      *Treatment:* Each Allowed Interest in AiBUY Holdco shall be cancelled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in AiBUY Holdco shall be entitled to any recovery or distribution under the Plan on account of such Interests.

   (b)      *Voting:* Holders of Interests in AiBUY Holdco are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Interests in AiBUY Holdco are not entitled to vote to accept or reject the Plan but may elect to complete and submit an Opt-Out Form before the Voting and Opt-Out Deadline.

6.      Class 6 —Interests in AiBUY Opco

   (a)      *Classification:* Class 7 consists of all Interests in AiBUY Opco.

   (b)      *Treatment:* On the Effective Date, all Interests in AiBUY Opco shall be Reinstated.

   (c)      *Voting*: Class 7 is Unimpaired. Holders of Interests in AiBUY Opco are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the

16

Bankruptcy Code. Holders of Interests in AiBUY Opco are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

F.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but for the purposes of administrative convenience and to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Reorganized Debtors to the Holders of certain Allowed Claims.

H.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors

17

shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

B.      *Restructuring Transactions*

On and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor; (e) the execution and delivery of the New Organizational Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the New Common Equity, as set forth herein; (f) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (g) the execution and delivery of the Restructured Stinv Note (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); and (h) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

C.      *Sources of Consideration for Plan Distributions*

The Debtors shall fund distributions under the Plan, as applicable, with: (1) Cash on hand; (2) the Plan Contribution; (3) the New Common Equity; (4) the Exit Facility; and (5) the Restructured Stinv Note. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the

4888-1469-7533.9

instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain securities in connection with the Plan, including the Exit Facility and the New Common Equity, will be exempt from SEC registration, as described more fully in Article IV.C.4 below.

1.      Cash on Hand

Except as otherwise set forth in the Plan, including with respect to the Plan Contribution, the Debtors or Reorganized Debtors, as applicable, shall use Cash on hand to fund distributions to certain Holders of Claims, as set forth in Article III of the Plan.

2.      Plan Contribution

On the Effective Date, the Plan Contribution shall be provided to the Debtors by the Plan Sponsor and used for the exclusive purpose of funding the sources and uses and other administrative costs of the Debtors, in connection with the substantial consummation of the Plan, including, for the avoidance of doubt, the funding of the General Unsecured Claim Satisfaction Pool Account. In consideration for the Plan Contribution, and in full satisfaction of the DIP Claims, the Plan Sponsor shall receive the New Equity Distribution.

3.      Issuance and Distribution of the New Common Equity

On the Effective Date, the New Common Equity shall be issued and distributed to the DIP Lender and the Plan Sponsor pursuant to the Plan. The issuance of New Common Equity shall be authorized without the need for any further corporate action and without any action by the Holders of Claims or other parties in interest. All of the New Common Equity issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Each distribution and issuance of the New Common Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution, issuance, and/or dilution, as applicable, and by the terms and conditions of the instruments evidencing or relating to such distribution, issuance, and/or dilution, as applicable, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution of the New Common Equity. Any Entity's acceptance of New Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The New Common Equity will not be registered on any exchange as of the Effective Date.

4.      The Exit Facility

On the Effective Date, the Reorganized Debtors shall execute and deliver the Exit Facility Documents, and such documents shall become effective in accordance with their terms. On and after the Effective Date, the Exit Facility Documents shall constitute legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms. Any Entity's entry into the Exit Facility Loan Agreement or any other Exit Facility Documents shall be deemed to agree to the terms of such Exit Facility Documents, as amended or modified from time to time following the Effective Date in accordance with their terms.

Confirmation shall be deemed approval of the Exit Facility Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees and expenses paid in connection therewith), and, to the extent not approved by the

19

Bankruptcy Court previously, the Reorganized Debtors will be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including the Exit Facility Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or Reorganized Debtors, as applicable, and the Exit Facility Lender may deem to be necessary to consummate the Exit Facility.

On the Effective Date, all of the claims, liens, and security interests to be granted in accordance with the terms of the Exit Facility Documents (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, subject only to such other liens and security interests as may be permitted under the Exit Facility Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

     5.      The Restructured Stinv Note

On the Effective Date, the Reorganized Debtors shall execute and deliver the Restructured Stinv Note, which shall become effective in accordance with its terms. On and after the Effective Date, the Restructured Stinv Note shall constitute a legal, valid, and binding obligation of the Reorganized Debtors and be enforceable in accordance with its terms.

Confirmation shall be deemed approval of the Restructured Stinv Note (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees and expenses paid in connection therewith), and, to the extent not approved by the Bankruptcy Court previously, the Reorganized Debtors will be authorized to execute and deliver those documents necessary or appropriate to obtain the Restructured Stinv Note without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or Reorganized Debtors, as applicable, and Stinv may deem to be necessary.

*D.*     *Exemption from Registration Requirements*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Equity pursuant to the Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. The shares of New Common Equity to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an Entity that is an "underwriter" as defined in Section 2(a)(11) of the Securities Act and in Section 1145 of the Bankruptcy Code.

*E.*     *Corporate Existence*

Except as otherwise provided in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other

formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

F.      **Corporate Action**

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the agreements with existing management; (2) selection of the directors, managers, and officers for the Reorganized Debtors; (3) implementation of the Restructuring Transactions; (4) the applicable Reorganized Debtors' entry into the Exit Facility Documents, if applicable; and (5) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facility Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

G.      **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations under the Exit Facility Documents, if applicable, and the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any). On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H.      **Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged and deemed satisfied in full; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of a Holder of a Claim or Interest shall continue in effect solely for purposes of allowing Holders of Allowed Claims to receive distributions under the Plan, provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan.

21

I.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Exit Facility Documents, if applicable, the New Organizational Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

J.    *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors, including the Exit Facility and the New Common Equity; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for any or all of the Exit Facility; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.    *New Organizational Documents*

Each Reorganized Debtor will file its New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective.

L.    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all of the Debtors' rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date. The Reorganized Debtors may pursue such Causes of Action,

as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, the Plan Supplement, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless an Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumption and assignment, or rejections, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Lease List, and the Rejected Executory Contract and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Claims Agent and served on the Reorganized Debtors no later than fourteen (14) days after the effective date of such rejection.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Claims Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.I of the Plan, notwithstanding anything in a Proof of Claim to the contrary, unless leave to File a late Claim is obtained.

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.       *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

No later than seven calendar days before the Confirmation Objection Deadline, the Debtors shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases, which shall include a description of the procedures for objecting to assumption thereof based on the proposed cure amounts or the Reorganized Debtors' ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code). Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by the counsel to the Debtors no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

In the event of a dispute regarding: (1) the amount of any payments to cure such a default; (2) the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following either (a) the entry of a Final Order or orders resolving the dispute and approving the assumption or (b) the settlement of the dispute between the parties which may be entered into without further order of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. For the avoidance of doubt, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not override or otherwise release any indemnification obligations in such Executory Contract or Unexpired Lease. Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Insurance Policies*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies, as well as any agreements, documents, and instruments relating to such insurance policies or coverage of all insured claims. Nothing in the Plan, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court (including any provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

E.      *Director, Officer, Manager, and Employee Liability Insurance*

Before the Effective Date, the Debtors have purchased and maintained directors, officers, managers, and employee liability tail coverage for the [six-year period] following the Effective Date for the benefit of the Debtors' current and former directors, managers, officers, and employees on terms no less favorable to such persons than their existing coverage under the D&O Liability Insurance Policies with available aggregate limits of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies.

After the Effective Date, the Reorganized Debtors may terminate or otherwise reduce the coverage under any such policies (including, if applicable, any "tail policy") with respect to conduct occurring after the Effective Date, and all officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

On and after the Effective Date, each of the Reorganized Debtors may purchase additional directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

F.      *Employee and Retiree Benefits*

Except as otherwise provided in the Plan and notwithstanding the rejection of any such agreements, on and after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion amend, adopt, assume, and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; provided that the consummation of the transactions contemplated in the Plan shall not constitute a "change in control" with respect to any of the foregoing arrangements. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, may continue to be paid in accordance with applicable law.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have fourteen (14) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

I.      *Non-Occurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

J.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest) each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at

any time after the Effective Date. The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

B.    *Distributions on Account of Obligations of Multiple Debtors*

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan; *provided* that Claims held by a single Entity against different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor. Any such Claims shall be released and discharged pursuant to Article VIII of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay U.S. Trustee fees until such time as a particular case is closed, dismissed, or converted.

C.    *Distribution Agent*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors on the Effective Date.

D.    *Delivery of Distributions*

    1.    Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors: (a) to the signatory set forth on any Proof of Claim or Proof of Interest filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is filed or if the Debtors have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI of the Plan, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors and the Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

    2.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged of and forever barred.

3. No Fractional Distributions

No fractional shares of the New Common Equity shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an applicable Allowed Claim would otherwise result in the issuance of a number of shares of the New Common Equity that is not a whole number, the actual distribution of shares of the New Common Equity shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of the New Common Equity shall be adjusted as necessary to account for the foregoing rounding.

E.    *Manner of Payment*

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.    *Compliance Matters*

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

G.    *Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan, the DIP Order, or the Confirmation Order, postpetition interest shall accrue and be paid on all Claims through the Effective Date (i) at the Federal Judgment Rate or (ii) to the extent that the Claim arises under a contract between the Claimant and the Debtors, at the applicable rate provided for under the applicable contract rate.

H.    *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

I.    *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, each Debtor and each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any

28

nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); *provided, however,* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Debtors or Reorganized Debtors (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

J.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.    Claims Payable by Third Parties

The availability, if any, of insurance policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the insurance policies of the Debtors or Reorganized Debtors, as applicable. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims Agent without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

*A.     Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order and the DIP Orders), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall be binding on all parties.

*B.     Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (1) file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.L of the Plan.

*C.     Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

*D.     Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

F.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

G.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

H.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim plus interest, if applicable

I.      *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.      *Discharge of Claims*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan or voted to reject the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

C.      *Release of Liens*

**Except (1) with respect to the Liens securing (a) the Exit Facility, (b) Other Secured Claims that are Reinstated pursuant to the Plan, or (c) obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan or (2) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtors, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall**

32

execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

D.    *Debtor Release*

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the DIP Loan Documents, the Disclosure Statement, the DIP Facility, the Exit Facility Documents, the New Organizational Documents, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the DIP Loan Documents, the Disclosure Statement, the DIP Facility, the Exit Facility Documents, the New Organizational Documents, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any party for willful misconduct or gross negligence, or (2) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Third-Party Release*

Effective as of the Effective Date, each Releasing Party  in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party,

33

the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the DIP Loan Documents, the Disclosure Statement, the DIP Facility, the Exit Facility Documents, if applicable, the New Organizational Documents, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the DIP Loan Documents, the Disclosure Statement, the DIP Facility, the Exit Facility Documents, if applicable, the New Organizational Documents, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any party for willful misconduct or gross negligence, any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Each of the Releasing Parties knowingly grants the Third-Party Releases notwithstanding that each Releasing Party may hereafter discover facts in addition to, or different from, those which either such Releasing Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and each Releasing Party expressly waives any and all rights that such Releasing Party may have under any statute or common law principle which would limit the effect of the Third-Party Release to those claims actually known or suspected to exist as of the Agreement Effective Date. In connection with their agreement to the foregoing Third-Party Releases, the Releasing Parties knowingly and voluntarily waive and relinquish any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, comparable or equivalent to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

F.      *Exculpation*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, related prepetition transactions, the DIP Loan Documents, the Disclosure Statement, the Exit Facility Documents, if applicable, the New Organizational Documents, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Exit Facility Documents, if applicable, the New Organizational Documents, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of

34

**the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

G.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

H.    *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

K.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

L.    *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.    *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.    the Bankruptcy Court shall have entered the Confirmation Order;

2.    the Plan Sponsor shall have funded the Plan Contribution, including the amounts necessary to fund the General Unsecured Claim Satisfaction Pool Account;

3.    the Debtors shall have funded the Professional Fee Reserve account;

4.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

5.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been

36

filed and shall be in form and substance acceptable to the DIP Lender, the Plan Sponsor, and the Exit Facility Lender;

6.      the Exit Facility Documents shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived), subject to any applicable post-closing execution and delivery requirements;

7.      the Restructured Stinv Note shall be in full force and effect;

8.      the New Organizational Documents shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived), subject to any applicable post-closing execution and delivery requirements;

9.      the Confirmation Order, in form and substance acceptable to the Debtors, the DIP Lender, the Plan Sponsor, and the Exit Facility Lender, (a) shall have been duly entered and in full force and effect, (b) shall not have been reversed, stayed, modified or vacated on appeal; and (c) shall have become a Final Order.

10.      all governmental and third-party approvals and consents necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

11.      all conditions precedent to the issuance of the New Common Equity, other than any conditions related to the occurrence of the Effective Date, shall have occurred and the New Common Equity shall have been issued.

B.      *Waiver of Conditions Precedent*

The Plan Sponsor may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

D.      *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan prior to Confirmation and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.      Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to

4888-1469-7533.9

which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

11.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.J.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

12.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.    enter an order or Final Decree concluding or closing the Chapter 11 Cases;

16.    enforce all orders previously entered by the Bankruptcy Court; and

hear any other matter not inconsistent with the Bankruptcy Code; *provided, however,* that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

# ARTICLE XII.
# MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first.

D.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or

4888-1469-7533.9

the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Service of Documents*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

AiBUY Holdco, Inc.
18111 Preston Road
Suite 620
Dallas, TX 75252
Attention: Jim Roundtree, Chief Financial Officer
E-mail: jim@aibuy.io

With copies to:

FOLEY & LARDNER LLP
2021 McKinney Avenue
Suite 1600
Dallas, Texas 75201
Attention: Holland N. O'Neil
E-mail: honeil@foley.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

G.      *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

4888-1469-7533.9

H.    *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://cases.stretto.com/Cicis or the Bankruptcy Court's website at www.txnb.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, the Plan shall control. The documents considered in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

I.    *Non-Severability*

Except as set forth in Article VIII of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

J.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, no such parties, individuals, or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.    *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

L.    *Closing of Chapter 11 Cases*

The Reorganized Debtors shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

4888-1469-7533.9

DATED: November 15, 2022          Respectfully submitted by:

**AiBUY Holdco, Inc. and AiBUY Opco, LLC**

*/s/ Greg Baracato*
Name:  Greg Baracato
Title:    Chief Restructuring Officer

43