

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 15, 2023**

_____
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| AiBUY Holdco, Inc., *et al.*,[1] | § | Case No.: 22-31737-sgj11 |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:[2]

    a.    Subject to a reservation of rights,[3] consented to the entry of an order for relief or filed voluntary petitions for relief, as applicable, under chapter 11 of the Bankruptcy Code on November 1, 2022 (the "Petition Date"), in the United States Bankruptcy Court for the Northern District of Texas (the "Court");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal identification number are: AiBUY Holdco, Inc. (6241) and AiBUY Opco, LLC (5327). The Debtors' address is 18111 Preston Road, Suite 620, Dallas, TX 75252.

[2]    Capitalized terms used but not otherwise defined in this order (the "Confirmation Order") shall have the meanings given to them in the Plan.

[3]    The Debtors reserved their rights as set forth in the *Notice of Filing of Voluntary Petition of AiBUY Holdco, Inc.* [Docket No. 22].

b.      continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.      filed on November 15, 2022, (i) the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 85] (as may be amended, supplemented, or otherwise modified from time to time, including pursuant to this Confirmation Order, and including all exhibits and supplements thereto, the "Plan") and (ii) the *Disclosure Statement Relating to the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 86] (the "Disclosure Statement");

d.      filed on December 2, 2022, the *Debtors' Amended Motion for Entry of an Order (I) Approving the Disclosure Statement on a Final Basis, (II) Scheduling a Plan Confirmation Hearing, (III) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief* [Docket No. 132];

e.      obtained on January 9, 2023, entry of the *Order (I) Approving the Disclosure Statement on a Final Basis, (II) Scheduling a Plan Confirmation Hearing, (III) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto and (IV) Granting Related Relief* [Docket No. 159] (the "Disclosure Statement Order") approving the adequacy of the Disclosure Statement, the procedures for soliciting acceptances and rejections of the Plan (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

f.      caused the Solicitation Packages, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and deadline for objecting to confirmation of the Plan, notice of the Third-Party Release and process for opting out, and non-voting notices to be distributed on or about January 9, 2023 (the "Solicitation Date") in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the Certificates of Service filed by Stretto [Docket Nos. 162, 166, 168-170, and 176-177] (the "Solicitation Affidavits");

g.      filed on January 31, 2023, the *Notice of Filing of Plan Supplement* [Docket No. 179] (the "Initial Plan Supplement") and caused it to be distributed to the parties listed on Exhibits A and B of that certain *Certificate of Service* [Docket No. 180] (the "Plan Supplement Certificate of Service") filed with the Court;

h.      caused to be filed on February 8, 2023, the *Certification of Stretto Regarding Tabulation of Votes in Connection With the Debtors' Disclosure Statement and Chapter 11 Plan* [Docket No. 189] (the "Voting Report");

i.      filed on February 9, 2023, the *Notice of Filing of First Amended Plan Supplement* [Docket No. 191] (together with the Initial Plan Supplement, as either may be

modified, supplemented, or otherwise amended from time to time prior to the Effective Date, the "Plan Supplement");

j.       filed on February 13, 2023, the *Declaration of Greg Baracato in Support of Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. ###] (the "Baracato Declaration"); and

k.       filed on February 13, 2023, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. ###] (the "Confirmation Brief").

This Court having:

a.       entered the Disclosure Statement Order on January 9, 2023;

b.       set January 31, 2023, as the deadline for voting on the Plan and for opting out of the Third-Party Release (the "Voting and Opt-Out Deadline");

c.       set February 6, 2023, at 5:00 p.m. (prevailing Central Time) (the "Voting and Plan Objection Deadline") as the deadline for filing objections to confirmation of the Plan;

d.       set February 15, 2023, at 9:30 a.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.       reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Baracato Declaration, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.       held the Confirmation Hearing;

g.       heard the statements and arguments made by counsel in respect of Confirmation;

h.       considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

i.       entered rulings on the record at the Confirmation Hearing (the "Confirmation Rulings");

j.       overruled all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record and reflected in this Confirmation Order, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order; and

3

k.      taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and on the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing; and after due deliberation and good cause appearing therefor, the Court hereby

**FINDS, DETERMINES, CONCLUDES, AND ORDERS AS FOLLOWS:**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. The findings and conclusions of the Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction and Venue.**

2.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Confirmation of the Plan constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

4887-5767-1504.7

**C.     Eligibility for Relief.**

3.     The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of these Chapter 11 Cases.**

4.     On the Petition Date, subject to a reservation of rights, the Debtors consented to entry of orders for relief or filed a voluntary petition, as applicable, commencing these Chapter 11 Cases. On November 3, 2022, the Court entered an order [Docket No. 48] authorizing the joint administration of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.     Judicial Notices**

5.     The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.     Plan Supplement.**

6.     The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy

4887-5767-1504.7

Code and the Bankruptcy Rules; *provided* that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

G.    **Modifications to the Plan.**

7.    Notwithstanding anything to the contrary in the Plan, including, but not limited to, Articles II.B, III.B.3, and IV.C, the Plan is modified as follows:

a.    on the Effective Date, (a) each Allowed Interest in AiBUY Holdco, including, but not limited to, all common stock and all preferred stock, shall be cancelled, released, and extinguished, and will be of no further force or effect, and no Holder of Interests in AiBUY Holdco shall be entitled to any recovery or distribution under the Plan on account of such Interests; and (b) 100% of the New Common Equity shall be issued and distributed to Stinv or its designee in partial satisfaction of the Class 3 Prepetition Stinv Claims; and

b.    on the Effective Date, the Reorganized Debtors shall execute and deliver the Restructured Stinv Note to Stinv: (i) in its capacity as DIP Lender and in full satisfaction of the DIP Claims and all Liens securing such DIP Claims; (ii) in its capacity as Plan Sponsor on account of the Plan Contribution; and (iii) in its capacity as a Holder of Class 3 Prepetition Stinv Claims on account of the balance of the Prepetition Stinv Claims after accounting for the distribution of New Common Equity as set forth in paragraph 7(a) of this Confirmation Order.

8.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or

4887-5767-1504.7

modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications is adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

9.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan as modified.

**H.      Objections Overruled.**

10.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**I.      Disclosure Statement Order.**

11.      On January 9, 2023, the Court entered the Disclosure Statement Order, which, among other things, fixed the Voting and Opt-Out Deadline and the Plan Objection Deadline.

**J.      Transmittal and Mailing of Materials; Notice.**

12.      As evidenced by the Solicitation Affidavits and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan

Supplement, and all the other materials distributed by the Debtors in connection with the Confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and the procedures set forth in the Disclosure Statement Order. The Debtors provided due, adequate, and sufficient notice of the Voting and Opt-Out Deadline, the Plan Objection Deadline, the Confirmation Hearing, the Third-Party Release, and the ability of a party in interest to "opt out" of the Third-Party Release, and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order. No other or further notice is or shall be required.

**K.     Solicitation.**

13.     The Plan, the Disclosure Statement, Plan Supplement, and the other materials distributed by the Debtors in connection with solicitation of the Plan were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the procedures set forth in the Disclosure Statement Order.

14.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, the Local Rules, and all other applicable rules, laws, and regulations.

**L.     Voting Report.**

15.     Before the Confirmation Hearing, the Debtors Filed the Voting Report. The Voting Report was admitted into evidence during the Confirmation Hearing without objection. The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure

Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

16.     As set forth in the Plan and the Disclosure Statement, only holders of Claims in Class 3 were eligible to vote to accept or reject the Plan. Holders of Claims in Classes 1, 2, 4, and 6 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Interests in Class 5 (the "Deemed Rejecting Class") are Impaired and deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

17.     As evidenced by the Voting Report, Class 3 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

**M.     Bankruptcy Rule 3016.**

18.     The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**N.     Burden of Proof.**

19.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Each witness who testified on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**O.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

20.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy

Code as follows:

    **a.    Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

21.    The Plan complies with all applicable provisions of the Bankruptcy Code, including

sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

    **i.    Sections 1122 and 1123(a)(1) – Proper Classification.**

22.    The classification of Claims and Interests under the Plan is proper under the

Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code,

Article III of the Plan provides for the separate classification of Claims and Interests into

six different Classes, based on differences in the legal nature or priority of such Claims and

Interests (other than Administrative Claims, DIP Claims, Professional Fee Claims, and Priority

Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as

separate Classes by section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal

reasons exist for the separate classification of the various Classes of Claims and Interests created

under the Plan, the classifications were not implemented for any improper purpose, and the

creation of such Classes does not unfairly discriminate between or among holders of Claims or

Interests.

23.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims

or Interests contains only Claims or Interests substantially similar to the other Claims or Interests

within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b),

and 1123(a)(1) of the Bankruptcy Code.

4887-5767-1504.7

### ii.      Section 1123(a)(2) – Specification of Unimpaired Classes.

24.     Article III of the Plan specifies that Claims in the Deemed Accepting Classes are Unimpaired under the Plan. In addition, Article II of the Plan specifies that (a) each Holder of Administrative Claims shall receive in full and final satisfaction of its Allowed Claim Cash equal to the amount of such Allowed Administrative Claim, and (b) each Holder of a Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.      Section 1123(a)(3)—Specification of Treatment of Voting Classes.

25.     Article III of the Plan specifies Claims in Class 3 are Impaired.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.      Section 1123(a)(4)—No Discrimination.

26.     Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.      Section 1123(a)(5)—Adequate Means for Plan Implementation.

27.     The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including, without limitation: (a) the Assumed Executory Contract and Unexpired Lease List; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the New Organizational Documents; (d) the Exit Facility Term Sheet; and (e) the schedule of retained Causes of Action (such Causes of Action, the "Retained Causes of Action").  The Plan provides general authority for the Debtors or Reorganized Debtors, as applicable, to take all actions necessary or appropriate to implement any transaction

described in, approved by, contemplated by, or necessary to effectuate the Plan, as set forth more fully in Article IV of the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.    Section 1123(a)(6)—Non-Voting Equity Securities.

28.    The Plan does not provide for the issuance of new non-voting equity securities. Accordingly, section 1123(a)(6) of the Bankruptcy Code is inapplicable.

### vii.    Section 1123(a)(7)—Directors, Officers, Managers, and Trustees.

29.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan Supplement and the New Organizational Documents identify the initial directors and officers of the Reorganized Debtors on and after the Effective Date, and the New Organizational Documents provide the manner for selection of any successors.

### b.    Section 1123(b)—Discretionary Contents of the Plan.

30.    The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code. Any such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

### i.    Impairment/Unimpairment of Any Class of Claims or Interests.

31.    Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

32.    Article V of the Plan provides that on the Effective Date, except as otherwise provided therein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance

4887-5767-1504.7

plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume filed on or before the Effective Date; or (d) is identified on the Assumed Executory Contract and Unexpired Lease List. Entry of this Confirmation Order by the Bankruptcy Court constitutes approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Therefore, the Plan satisfies section 1123(b)(2) of the Bankruptcy Code.

### iii.    Compromise and Settlement.

33.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, the Plan constitutes a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

### iv.    Debtor Release.

34.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the Debtor Release of claims and Causes of Action described in Article VIII.D of the Plan represents a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019. For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered, admitted, or adduced at the Confirmation hearing, such releases are a necessary and integral part of the Plan and are fair and

13

equitable and in the best interests of the Debtors, their estates, and the Holders of Claims and
Interests. The Debtor Release is "fair and equitable" and "in the best interests of the estate"
considering (a) the probability of success in litigation of the released Claims and Causes of Action
given uncertainty in fact and law with respect to the Claims and Causes of Action; (b) the
complexity and likely duration and expense of litigating the released Claims and Causes of Action;
and (c) the arm's-length negotiations which produced the settlement embodied in the Plan and the
Restructuring Transactions. The Debtors' pursuit of any such claims against the Released Parties is
not in the best interests of the estates' various constituencies because the costs involved would
likely outweigh any potential benefit from pursuing such claims.

35.    The Debtor Release appropriately offers protection to parties that participated in
the Debtors' restructuring process. The Released Parties under the Plan include: (a) each of the
Debtors; (b) the Reorganized Debtors; (c) the DIP Lender; (d) with respect to each of the foregoing,
where any of the foregoing is an investment manager, advisor, or sub-advisor for a beneficial
holder, such beneficial holder; and (e) with respect to each of the foregoing entities in clauses (a)
through (d), such Entity and its current and former Affiliates, and such Entities' and their current
and former Affiliates' current and former directors, managers, officers, equity holders (regardless
of whether such interests are held directly or indirectly), predecessors, successors, and assigns,
subsidiaries, affiliated investment funds or investment vehicles, managed accounts or funds,
investment managers, advisors, and sub-advisors with discretionary authority, participants, and
each of their respective current and former equity holders, officers, directors, managers, principals,
members, management companies, fund advisors, employees, agents, advisory board members,
financial advisors, partners, attorneys, accountants, investment bankers, consultants,
representatives, and other professionals but in each case set forth in this clause (e) other than any

4887-5767-1504.7

Former Debtor D&O; *provided*, *however*, that any Entity identified in the foregoing clause (a) through (e) that opts out of the releases shall not be a "Released Party."  The Released Parties made significant concessions and contributions to the Debtors' Chapter 11 Cases, including but not limited to, actively supporting the Plan and the Chapter 11 Cases and settling and compromising substantial rights and claims against the Debtors under the Plan. The Confirmation Hearing Notice provided unambiguous information describing the Debtor Release in bold and conspicuous typeface.

36.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

### v.    Release by Holders of Claims and Interests.

37.    The Third-Party Release by the Releasing Parties set forth in Article VIII.E of the Plan is an essential provision of the Plan. The Third-Party Release is (a) consensual, (b) in exchange for the good and valuable consideration provided by the Released Parties, (c) a good-faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release, (d) materially beneficial to and in the best interests of the Debtors, their Estates, and their stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases, (e) fair, equitable, and reasonable, (f) given and made after due notice and opportunity for hearing, (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third-Party Release against any of the Released Parties, and (h) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

38.    The Third-Party Release is an integral part of the Plan. Like the Debtor Release, the Third-Party Release facilitated participation in both the Plan and the chapter 11 process generally. The Third-Party Release is instrumental to the Plan and was critical in incentivizing the Released Parties to support the Plan. The Third-Party Release was instrumental in developing a plan that maximized value for all of the Debtors' stakeholders. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring  process by, among other things, supporting the Plan. Furthermore, the Third-Party Release is consensual because all parties in interest, including all Releasing Parties, were provided notice of the chapter 11 proceedings, the Plan, the deadline to object to confirmation of the Plan, the opportunity to opt out of the Third-Party Release, and were properly informed that all holders of Claims against or Interests in the Debtors that did not either opt out or file an objection to the inclusion of such holder as a Releasing Party under the provisions contained in Article VIII of the Plan would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the ballots, and the applicable notices.

39.    The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third-Party Release. Among other things, the Plan provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. The Debtors, as evidenced by the Solicitation Affidavits, provided sufficient notice of the Third-Party Release, and no further or other notice is

necessary. The Third-Party Release is specific in language, integral to the Plan, a condition of the

Plan Settlement, and given for substantial consideration. In light of, among other things, the value

provided by the Released Parties to the Debtors' Estates and the critical nature of the Third-Party

Release to the Plan, the Third-Party Release is appropriate.

### vi. Exculpation.

40.     The exculpation provisions set forth in Article VIII.F of the Plan (the

"Exculpation") are essential to the Plan. The record in the Chapter 11 Cases fully supports the

Exculpation, which is appropriately tailored to protect the Exculpated Parties from unnecessary

litigation and contains appropriate carve outs for actual fraud, willful misconduct, and gross

negligence. The Confirmation Hearing Notice provided unambiguous information describing the

Exculpation provisions of the Plan in bold and conspicuous typeface.

### vii. Injunction.

41.     The injunction provisions set forth in Article VIII.G of the Plan are essential to the

Plan and are necessary to implement the Plan and to preserve and enforce the discharge, Debtor

Release, the Third-Party Release, and the Exculpation. Such injunction provisions are

appropriately tailored to achieve those purposes.

### viii. Preservation of Claims and Causes of Action.

42.     Article IV.L of the Plan appropriately provides for the preservation by the Debtors

of certain Causes of Action in accordance with section 1123(b) of the Bankruptcy Code. Causes

of Action not released by the Debtors or exculpated under the Plan will be retained by the

Reorganized Debtors as provided by the Plan. The Plan is specific and unequivocal with respect

to the Causes of Action to be retained by the Debtors. The Plan and Plan Supplement provide

meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain,

and all parties in interest received adequate notice with respect to such retained Causes of Action.

The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and holders of Claims or Interests. For the avoidance of any doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

### ix.    Lien Releases

43.      Except (a) with respect to the Liens securing (1) the Exit Facility, (2) Other Secured Claims that are Reinstated pursuant to the Plan, or (3) obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtors, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases. All of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, or other security interests.

### c.    Section 1123(d) – Cure of Defaults.

44.      Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Assumed Executory Contract or

Unexpired Lease shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of the default amount in Cash on the Effective Date, subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

> **d. Section 1129(a)(2) – Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

45.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

46.     The Debtors and their agents properly solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

47.     The Debtors solicited and tabulated votes on the Plan in accordance with and pursuant to sections 1125(a) and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law. The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable

provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the

Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the

protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation under the Plan.

48.     The Debtors and their agents have participated in good faith and in compliance with

the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and

distribution of recoveries under the Plan and, therefore, are not and, on account of such

distributions, will not be liable at any time for the violation of any applicable law, rule, or

regulation governing the solicitation of acceptances or rejections of the Plan or distributions made

pursuant to the Plan so long as such distributions are made consistent with and pursuant to the

Plan.

**e.   Section 1129(a)(3) – Proposal of Plan in Good Faith.**

49.     The Debtors have proposed the Plan in good faith and not by any means forbidden

by law.  In determining that the Plan has been proposed in good faith, the Court has examined the

totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the

process leading to its formulation.  The Debtors' good faith is evident from the facts and the record

of the Chapter 11 Cases, the Disclosure Statement, the record of the Confirmation Hearing and

other proceedings held in the Chapter 11 Cases.

50.     The Plan is the product of good faith, arm's-length negotiations by and among the

Debtors, the Debtors' directors, officers and managers, the DIP Lender, and the other constituencies

involved in the Chapter 11 Cases, including the Exit Facility Lender.  The Plan itself and the

process leading to its formulation provide independent evidence of the good faith of the Debtors,

the DIP Lender, and the Exit Facility Lender, serve the public interest, and assure fair treatment of

holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors

commenced the Chapter 11 Cases or consented to entry of an order for relief, as applicable, with

the belief that the Debtors were in need of restructuring, and the Plan was negotiated and proposed with the intention of maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f. Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable.**

51. Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

**g. Section 1129(a)(5) – Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy.**

52. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. The Reorganized Debtors' initial directors and officers, to the extent known, have been disclosed at or prior to the Confirmation Hearing through the Plan Supplement and, to the extent not known, will be determined in accordance with the Plan. The proposed officers and directors for the Reorganized Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with the interests of Holders of Claims and Interests and with public policy.

**h. Section 1129(a)(6) – Rate Changes.**

53. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i. Section 1129(a)(7) – Best Interests of Holders of Claims and Interests.**

54. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached as Exhibit C to the Disclosure Statement and the other evidence

related thereto in support of the Plan that was proffered or adduced at, prior to, or in affidavits filed in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

> **j.  Section 1129(a)(8) – Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Voting Classes.**

55.     The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Additionally, Class 3, the only class of Claims or Interests entitled to vote to accept or reject the Plan, voted to accept the Plan.

> **k.  Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

56.     The treatment of Administrative Claims and Priority Tax Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article II of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

> **l.  Section 1129(a)(10) – Acceptance by at Least One Impaired Class.**

57.     As set forth in the Voting Report, Holders of Claims in Class 3 voted to accept the Plan in the requisite number and amount. No other Impaired Class of Claims exists under the Plan. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code do not apply to the Plan and/or are satisfied by the Plan.

**m. Section 1129(a)(11) -- Feasibility of the Plan.**

58.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections attached as <u>Exhibit B</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in affidavits filed in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**n. Section 1129(a)(12) – Payment of Statutory Fees.**

59.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**o. Section 1129(a)(13), (14), (15), and (16) – Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

60.     Sections 1129(a)(13), (14), (15) and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors do not maintain "retiree benefit" programs as defined in section 1114 of the Bankruptcy Code, owe no domestic support obligations, are not individuals, and are not nonprofit corporations.  However, Article V.F of the Plan contemplates that, if there are any retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code) payable by the Debtors, the same may continue to be paid in accordance with applicable law.

4887-5767-1504.7

**p. Section 1129(a)(14), (15), and (16) – Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

61.     The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**q. Section 1129(b) – Confirmation of Plan Over Nonacceptance of Voting Classes.**

62.     Notwithstanding the fact that the Deemed Rejecting Class has not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because (a) Class 3 voted to accept the Plan; (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims and Interests in the Deemed Rejecting Class; (c) the Plan has been proposed in good faith and is reasonable; and (d) the Plan meets the requirements that (i) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (ii) no Holder of a Claim or Interest in a Class senior to such Class is receiving more than 100% on account of its Claim. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Deemed Rejecting Class.

**r. Section 1129(c) – Only One Plan.**

63.     The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

4887-5767-1504.7

**s.   Section 1129(d) – Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.**

64.      No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**t.   Section 1129(e) – Not Small Business Cases.**

65.      These Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**u.   Satisfaction of Confirmation Requirements.**

66.      Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**v.   Good Faith.**

67.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the Debtors have been, are, and will continue acting in good faith if they proceed to:  (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

### w.  Conditions to Effective Date.

68.     The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

### x.  Implementation.

69.     All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

### y.  Treatment of Executory Contracts and Unexpired Leases.

70.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

71.     The Debtors gave notice of the proposed Cure Claims to each non-Debtor counterparty to an Executory Contract or Unexpired Lease that the Debtors seek to assume under the Plan.  The notice of the proposed Cure Claims was good, sufficient, and appropriate under the circumstances, and no further notice need be given to any party in respect of establishing a Cure Claim for the respective Executory Contract or Unexpired Lease.  Non-Debtor counterparties to the applicable Executory Contracts and Unexpired Leases have had a sufficient, reasonable, and appropriate opportunity to object to the proposed cure amounts.

### z.  Disclosure of Facts.

72.     The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

### aa. Objections.

73.     All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects, with prejudice. All withdrawn objections, if any, are deemed withdrawn with prejudice. All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Notice, if any, are deemed waived. All parties have had a full and fair opportunity to litigate all issues raised or might have been raised in the objections to Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

4887-5767-1504.7

## **ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

74.     This Confirmation Order confirms the Plan, as modified herein, in its entirety.

75.     This Confirmation Order approves the Plan Supplement, including the documents contained therein that may be amended through and including the Effective Date in accordance with and as permitted by the Plan. The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided*, *however*, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

76.     The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to:  (a) the Debtors; (b) the DIP Lender; and (c) all holders of Claims or Interests.

77.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the Court's intent that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

### A.     Objections.

78.     To the extent that any objections or reservations of rights with respect to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing and incorporated in this Confirmation Order,

all such objections and reservations of rights are hereby overruled in their entirety and on their merits in all respects.

**B.      Findings of Fact and Conclusions of Law.**

79.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**C.      Confirmation Hearing Notice**

80.    The Confirmation Hearing Notice provided due, adequate, and sufficient notice under the circumstances of the Chapter 11 Cases of the Voting and Opt-Out Deadline, the Plan Objection Deadline, the Confirmation Hearing, the Third-Party Release, and the ability of a party in interest to "opt out" of the Third-Party Release, and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable nonbankruptcy law.

**D.      Plan Modifications.**

81.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are conclusively presumed to accept the Plan as modified by this

Confirmation Order. The modifications to the Plan described or set forth in this Confirmation Order and all modifications to the Plan Supplement are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment of any Claims, (d) require re-solicitation of the Plan and Disclosure Statement, (e) require that Holders of Claims in Class 3, the only class entitled to vote on the Plan, be afforded an opportunity to change its previously cast acceptance of the Plan. Under the circumstances, the form and manner of notice of the proposed modifications to the Plan are adequate, and no other or further notice of the proposed modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the modifications set forth in and approved by this Confirmation Order.

E.      **Post-Confirmation Modification of the Plan.**

82.     Subject to the limitations and terms contained in Article X of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of this Court.

F.      **Plan Classification Controlling.**

83.     The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.

G.      **No Action Required.**

84.     No further action of the respective directors, equity holders, managers, or members of the Debtors or Reorganized Debtors is required to authorize the Debtors or the Reorganized

Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions set forth therein, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

85.     This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**H.     General Settlement of Claims and Interests.**

86.     Pursuant to section 1123 of the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan. All distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

**I.     Restructuring Transactions.**

87.     On the Effective Date, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any Restructuring Transactions, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that

4887-5767-1504.7

satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state law; (d) the execution and delivery of any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor; (e) the execution and delivery of the New Organizational Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the New Common Equity, as set forth herein and in the Plan; (f) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (g) the execution and delivery of the Restructured Stinv Note (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); and (h) all other actions that the applicable Entities determine to be necessary, including, but not limited to, paying all fees and expenses incurred by the Plan Sponsor with respect to the Restructuring Transactions and making filings or recordings that may be required by applicable law in connection with the Plan.

**J.      Approval of the Exit Facility.**

88.      On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility, the terms of which will be set forth in the Exit Facility Documents. This Confirmation Order

4887-5767-1504.7

constitutes approval of the Exit Facility and the Exit Facility Documents and all transactions contemplated thereby, including any supplemental or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein. The Reorganized Debtors are authorized to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility, without further notice to or order of the Court, act, or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors and the Exit Facility Lender may deem necessary to consummate the Exit Facility.

89.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents:  (a) shall be deemed to be granted; (b) shall be legal, binding, and enforceable first priority Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that

4887-5767-1504.7

perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

### K.    Corporate Action and Plan Implementation.

90.    On the Effective Date, and without the need for any further action by any of the Debtors' officers, directors, managers, members or shareholders, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects in accordance with the law of the jurisdiction of formation for each of the Debtors. All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan or corporate structure of the Debtors or the Reorganized Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the officers, directors, managers, members or shareholders of the Debtors or the Reorganized Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to affect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors. The authorizations and approvals contemplated by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

91.    The Debtors and the Reorganized Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are

authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or take any or all corporate actions authorized to be taken pursuant to the Plan or this Confirmation Order, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, all such documents shall be accepted upon presentment by each of the respective state filing or recording offices and filed or recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. Pursuant to all applicable provisions of the business corporation laws of any applicable state, no action of the Debtors' boards of directors will be required to authorize the Debtors to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtors and the Reorganized Debtors, as applicable, enforceable against each in accordance with the respective terms thereof.

92.    The New Organizational Documents shall prohibit the issuance of nonvoting equity securities and shall comply with all other applicable provisions of 11 U.S.C. § 1123(a)(6) regarding the distribution of power among, and dividends to be paid to, different classes of voting securities.

**L.    Vesting of Assets in the Reorganized Debtors.**

93.    Except as otherwise provided in this Confirmation Order, the Plan, or any other agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims,

charges, or other encumbrances (except for Liens securing obligations under the Exit Facility Documents, and the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any). On and after the Effective Date, the Reorganized Debtors may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

94.     On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. To the extent that the retention by the Debtors or the Reorganized Debtors of assets or property held immediately prior to the Effective Date in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtors or the Reorganized Debtors (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Debtors or the Reorganized Debtors with good title to such property, free and clear of all Liens, Claims, charges, or other encumbrances, except as expressly provided in the Plan or this Confirmation Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) does not and shall not subject the Debtors or the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

**M.     Cancellation of Securities and Agreements.**

95.     Upon the Effective Date, except as set forth in the Plan and the Exit Facility Documents: (a) the obligations of the Debtors under any certificate, security, share, note, bond,

indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be canceled solely as to the Debtors and their affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.

### N.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan

96.    The releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are "so ordered," and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party; *provided*, *however*, notwithstanding anything to the contrary in the Plan, the Exculpation under the Plan is approved only as to the Debtors, and no claim or cause of action against any of the Exculpated Parties may be brought by any Person for any claim or cause of action in connection with or related to these Chapter 11 Cases, the administration of the Plan or Assets to be distributed under the Plan, or the transactions in furtherance of the foregoing without first seeking and being granted leave from the Bankruptcy Court prior to commencing such asserted claim or cause of action.

4887-5767-1504.7

97.    Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

4887-5767-1504.7

**O.      Discharge of Claims and Termination of Interests.**

98.      Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in a contract, instrument, or other agreement or document executed pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has voted to accept the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**P.      Treatment of Executory Contracts and Unexpired Leases.**

99.      The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any

disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases and applicable Cure Claims) shall be and hereby are approved in their entirety.

100.     On the Effective Date, except as otherwise provided herein or in the Plan, pursuant to Article V of the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Unexpired Lease:  (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume filed on or before the Effective Date; or (d) is identified on the Assumed Executory Contract and Unexpired Lease List.  Entry of this Confirmation Order shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases set forth on the Assumed Executory Contract and Unexpired Leases List as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan or this Order, such assumptions, assignments, and rejections will be effective on the Effective Date of the Plan.

101.     Pursuant to Article V.C of the Plan, subject to resolution of any dispute regarding any Cure Claims and except as otherwise provided herein, all Cure Claims shall be satisfied by the Debtors, as the case may be, upon assumption or assignment, as applicable, of the underlying contracts and unexpired leases. Except as otherwise provided herein, assumption or assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims and nonmonetary defaults, if any, whether monetary or nonmonetary, arising under any assumed

Executory Contract or Unexpired Lease at any time before the effective date of the assumption or

assumption and assignment, as applicable. Subject to satisfaction of any Cure Claim, all liabilities

in any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has

been assumed or assigned shall be deemed disallowed and expunged, without further notice to or

action, order, or approval of the Court or any other entity, upon the deemed assumption of such

contract or unexpired lease. For the avoidance of doubt, and notwithstanding anything to the

contrary in the Plan or the applicable Unexpired Lease, neither the Debtors nor Reorganized

Debtors shall be liable to any party in any manner on account of an Unexpired Lease that has been

assumed and assigned to a third party pursuant to the Plan as set forth in the Plan Supplement.

### Q.    Insurance Policies.

102.    Pursuant to Article V.D of the Plan, as of the Effective Date, all of the Debtors'

insurance policies and any agreements, documents, or instruments relating thereto, shall be treated

as and deemed to be Executory Contracts. On the Effective Date, such insurance policies and any

agreements, documents, and instruments related thereto shall be assumed by the applicable

Debtors or Reorganized Debtors and shall continue in full force and effect thereafter in accordance

with their respective terms. After the Effective Date, the Reorganized Debtors may terminate or

otherwise reduce the coverage under any such policies (including, if applicable, any "tail policy")

with respect to conduct occurring after the Effective Date, and all officers, directors, managers,

and employees of the Debtors who served in such capacity at any time before the Effective Date

shall be entitled to the full benefits of any such policy regardless of whether such officers, directors,

managers, or employees remain in such positions after the Effective Date.

### R.    Provisions Governing Distributions.

103.    The distribution provisions of Article VI of the Plan shall be and hereby are

approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order,

the Reorganized Debtors shall make all distributions required under the Plan. The timing of and reserves from distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

**S.      Provisions Relating to Ad Valorem Taxes.**

104.      Ad valorem taxes for the 2023 tax year will be paid by the Reorganized Debtor in the ordinary course of business on or before the statutory deadline. Liens securing 2023 ad valorem taxes will remain in place securing such tax claims unimpaired by this Confirmation Order. Ad valorem tax creditors are not required to file an administrative claim to seek payment for 2023 tax year taxes.

**T.      Provisions Relating to Governmental Units.**

105.      Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a Claim; (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any police or regulatory liability to a Governmental Unit on the part of any Person as the owner, permittee, or operator of property after the Effective Date; or (d) any liability to a Governmental Unit on the part of any Person other than the Debtors or the Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing outside this Court, any liability described in the preceding sentence. Nor shall anything in this Confirmation Order or the Plan divest any tribunal of any jurisdiction to adjudicate any claim, liability, or defense described in this paragraph of the Confirmation Order.

**U.      Provisions Relating to Gas Monkey Holdings**

106.      Upon the assumption of the Assignment, License & Royalty Agreement dated January 31, 2013 (the "GMH Agreement"), with Gas Monkey Holdings, LLC (together with its successors and assigns, "GMH"), neither the Plan nor this Confirmation Order shall impair or

4887-5767-1504.7

modify the determination of "Adjusted Gross Revenue" or "Royalty" under the GMH Agreement, regardless of whether the amounts determined thereunder arose prior to or after the Petition Date or the Effective Date.

**V.    Provisions Relating to Oracle America, Inc.**

107.    Oracle America, Inc., by timely filing its objection to the Third-Party Release [Docket No. 184] and thereby opting out of the Third-Party Release, shall not be a Releasing Party under the Plan and shall not be bound by the Third-Party Release.

**W.    Provisions Regarding Itransition**

108.    On the Effective Date, the Debtors' Master Professional Service Agreement (the "Itransition MSA") with Itransition Group Limited ("Itransition") is assumed pursuant to Bankruptcy Code section 365.  Itransition has agreed to a cure amount in the amount of $1,230,685.97 (the "Itransition Cure Principal") if such amount is paid in full on or before March 7, 2023.  The Itransition Cure Principal is comprised of the amounts reflected in Itransition's filed proof of claim [Claim No. 64] plus accrued interest to the Effective Date as specified by the Itransition MSA. If payment of the Itransition Cure Principal is made after March 7, 2023, Itransition reserves its right to assert additional amounts for reasonable attorneys' fees under the Itransition MSA (in addition to the Itransition Cure Principal) as the appropriate cure amount to be paid under Bankruptcy Code section 365(b), with all parties reserving their rights as to that assertion of the additional cure amount.

**X.    Release of Liens.**

109.    Except (a) with respect to the Liens securing (i) the Exit Facility, if applicable, (ii) Other Secured Claims that are reinstated pursuant to the Plan, or (iii) obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created

pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtors, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

**Y.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

110.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than the first Business Day that is at least seven days after the Effective Date, the Reorganized Debtors shall cause notice of Confirmation and the occurrence of the Effective Date (the "Notice of Confirmation") to be filed on the docket and be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Confirmation Hearing Notice; *provided, however*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked as "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar language, unless such Entity has informed the Debtors in writing of, or the Debtors are otherwise aware of, such Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements. The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation

Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

111.     Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Confirmation Date must File an application for final allowance of such Professional Fee Claim no later than 45 days after the Effective Date. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount this Court allows, including from the Professional Fee Reserve, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash on the Effective Date based on its evaluation of the Professional Fee Claims Estimates and otherwise in accordance with the Plan.

112.     Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claim Bar Date. Holders of Administrative Claims that are required, but fail, to timely File and serve a request for such payment shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their assets and properties, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any notice thereof or objection by the Reorganized Debtors or any action by the Court.

**Z.     Section 1145 Exemption.**

113.     To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy law, the offering, issuance, and distribution under the Plan of the New Common Equity interests, whether on the Effective Date or any other date of distribution thereafter, pursuant to the terms of the Plan or the Confirmation Order, shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring

registration for the offer, issuance, or distribution of securities.  The issuance of the New Common

Equity is or was in exchange for a portion of an Allowed Claim.

**AA.    Section 1146 Exemption.**

114.    To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any

transfers of property pursuant hereto, including the issuance, transfer or exchange of any security

under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee,

intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax,

or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the

appropriate state or local governmental officials or agents shall forgo the collection of any such

tax or governmental assessment and accept for filing and recordation any of the foregoing

instruments or other documents pursuant to such transfers of property without the payment of any

such tax, recordation fee, or governmental assessment.

**BB.    Preservation of Causes of Action.**

115.    Except as otherwise provided in this Confirmation Order, the Plan, or in any

contract, instrument, release or other agreement entered into or delivered in connection with the

Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors

shall have vested in them as of the Effective Date, and the Reorganized Debtors shall retain and

may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action,

whether arising before or after the Petition Date, including Causes of Action retained as set forth

in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle

such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date,

other than the Causes of Action released by the Debtors pursuant to the releases and exculpations

contained in the Plan, including as set forth in Article VIII thereof. For the avoidance of doubt, the

Debtors' failure to specify a Cause of Action in the Disclosure Statement, the Plan, the Plan

Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth above and in the Plan. No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as an indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any preserved or retained Causes of Action against it. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order.

**CC.    Directors, Officers, and Managers.**

116.    Except as otherwise set forth in the Plan Supplement, as of the Effective Date, the existing boards of directors or boards of managers of the Debtors shall be replaced with the directors and managers set forth in the Plan Supplement without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, managers, and members.

**DD.    Effectiveness of All Action.**

117.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors, the Reorganized Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**EE.    Binding Effect.**

118.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the DIP Lender, the

and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

119.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors, and each of their respective successors and assigns.

120.    The Plan, all documents and agreements executed by the Debtors in connection therewith, this Confirmation Order, and all prior orders of the Court in the Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases, or the Reorganized Debtors.

**FF.    Nonseverability of Plan Provisions Upon Confirmation.**

121.    Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(g), 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry. Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and

4887-5767-1504.7

may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

### GG.    Waiver or Estoppel.

122.    Except as otherwise set forth in the Plan or this Confirmation Order, each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court before the Confirmation Date.

### HH.    Authorization to Consummate.

123.    The Debtors are authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.  The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the Effective Date.

### II.    Injunctions and Automatic Stay.

124.    Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

**JJ.    Reversal/Stay/Modification/Vacatur of Confirmation Order.**

125.    Except as otherwise provided in this Confirmation Order, if any provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

**KK.    Governmental Approvals Not Required.**

126.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations or any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

**LL.    Waiver of Filings.**

127.    Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

4887-5767-1504.7

**MM.  Headings.**

128.    Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Orders for any other purpose.

**NN.  Effect of Non-Occurrence of Conditions to the Effective Date.**

129.    If the Effective Date of the Plan does not occur, (a) the Plan shall be null and void in all respects other than as set forth herein and (b) nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the DIP Lender, the Exit Lender, the Plan Sponsor, any Holders, or any other Entity in any respect.

**OO.  Effect of Conflict Between Plan, the Disclosure Statement, the Plan Supplement, and Confirmation Order.**

130.    Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or the Plan Supplement (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision of the Plan conflicts with or is any way inconsistent with the provisions of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

**PP.  Waiver of 14-Day Stay.**

131.    Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

4887-5767-1504.7

**QQ.   Final Order.**

132.   This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**RR.   Retention of Jurisdiction.**

133.   Except as set forth in the Plan or this Confirmation Order, the Court may properly, and upon the Effective Date shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

# # # END OF ORDER # # #

4887-5767-1504.7